ROY NOBLE LEE, Presiding Justice,
for the Court:
Smith & Hitt Construction Company, Inc. [Smith & Hitt] filed a complaint and an amended complaint in the Circuit Court of Sunflower County against JDM Productions & Delta Sound Studio, a partnership organized under the laws of Mississippi, and Charlie Fowler, a/k/a Charles Henry Fowler, Jr., Robert E. Wiggins, Sr., Robert E. Wiggins, Jr., and Bobby G. Chrestman for the balance due on a promissory note, alleged to be thirty thousand seven hundred seventeen dollars fifty cents ($30,-717.50), together with interest and attorney’s fees.
The lower court heard the case without a jury and, at the conclusion of the evidence, found that as of July 24, 1981, there was due on the note the sum of twenty-six thousand six hundred thirty-eight dollars thirty-eight cents ($26,638.38); that on said date the holder of the note assigned same to Smith & Hitt without assigning its lien and thereby the security on the note was impaired to the extent of twenty-five thousand dollars ($25,000). Judgment was rendered in behalf of Smith & Hitt for sixteen hundred thirty-four dollars thirty-eight cents ($1,634.38), together with interest thereon, and ten percent (10%) attorney’s fees. Smith & Hitt has appealed here and assigns three errors in the trial below. We reverse and remand for a new trial.
The assignments of error present the contentions that (1) JDM Productions & Delta Sound Studio, the partnership, maker and principal obligor on the note sued on, was not entitled to the suretyship defense of impairment of collateral stated in Mississippi Code Annotated § 75-3-606(l)(b) (1972) and that Robert E. Wiggins, Sr. and Robert E. Wiggins, Jr., as partners in JDM, were not entitled to invoke impairment of collateral with respect to their liabilities under the partnership; (2) Bobby G. Chrestman was an accommodation maker only as to the interest of his son-in-law, Charlie Fowler, and Marion T. Smith was a beneficiary of that accommodation, hence Chrestman was not entitled to invoke the impairment of collateral suretyship defense under § 75-3-606 as to Fowler’s twenty-five percent (25%) pro rata partnership liability on the note; and (3) Chrestman and Wiggins, individually, and Smith, individually, were all accommodation parties to the note; Smith’s individual property was collateral only in his capacity as accommodation party; Chrestman and Wiggins, as individuals, were entitled to the impairment of collateral defense for the release of Smith’s individual property as security only to the extent of their recourse against Smith and his property, viz, twenty-five percent (25%).
In view of our conclusion in this case, it is unnecessary for us to make a detailed discussion of the assignments of errors and points raised by the appellant.
PART I.
In August, 1979, Charles Harry Fowler, Jr., Marion T. Smith, Dr. Robert E. Wiggins, Sr., and Robert E. Wiggins, Jr., entered into a partnership agreement for the purpose of forming a general recording and production business known as J.D.M. Productions and Delta Sound Studio. The articles of partnership provided that the partners were entitled to the capital and profits of the partnership in the following percentages:
Marion T. Smith 451*
Dr. Robert E. Wiggins, Sr. 207<
Charles Harry Fowler, Jr. 207!
Robert E. Wiggins, Jr. 151*
*898 The partnership agreement stated that all taxes, debts, losses, damages and other expenses were to be paid out of the funds of the partnership, and in case the partnership funds were not sufficient, by the partners in equal portions.[1]
In order to obtain capital necessary to operate the partnership and purchase equipment for its operation, the partnership borrowed $25,000 from the Peoples Bank of Indianola evidenced by note dated August 29, 1979. All of the partners signed the note as partners and as individuals. In addition to the partners, Bobby G. Chrestman and Doris Faye Smith, the wife of Marion T. Smith, signed the note. Chrestman (father-in-law of Fowler) signed the note at the request of Smith, who refused to sign the note until Chrestman and Dr. Robert E. Wiggins, Sr. executed it.
The following collateral was given to the bank as security:
(1) All equipment to be purchased by the partnership;
(2) One 1978 Coachman motor home which was the property of Dr. Wiggins, Sr.;
(3) One two-wheel fiberglass sound trailer;
(4) Deed of trust on a building owned by Marion T. Smith in Indianola, Mississippi; and
(5) “Life insurance on all.” [2]
The note became due on March 3, 1980, and was renewed by the bank. The same collateral was pledged and the same parties signed. The note was renewed again on November 12, 1980. The collateral for the last renewal was the recording equipment owned by the partnership and the first deed of trust on the building owned by Smith. The deed of trust was the same instrument, which was executed by Smith on August 29, 1979, to secure the original note. The Coachman motor home had been sold by Dr. Robert E. Wiggins, Sr. for $5,000 and the proceeds were applied toward payment of the debt.
The last renewal note of November 12, 1980, was not paid on its due date, February 10, 1981. The bank assigned the note without recourse to Smith & Hitt on July 24, 1981. The bank retained the deed of trust executed by Smith in 1979 as security for the Smith & Hitt note, but assigned to Smith & Hitt the security agreement executed by the partnership, together with the financing statement, which was collateral for the original loan of the partnership.
Smith testified that he caused his corporation, Smith & Hitt, to purchase the note, since the bank was threatening to foreclose the deed of trust, which Smith gave to the bank as collateral for the partnership loan; that he was the sole owner of Smith & Hitt; and that he signed a note to the bank as president of Smith & Hitt, and individually, for the purpose of purchasing the partnership note, in order to stop foreclosure of the deed of trust on his individual property. After acquiring the partnership note from the bank, Smith & Hitt filed suit against Fowler, Dr. Wiggins, Sr., Wiggins, Jr., and Chrestman for the $30,713.50, which it claimed was the amount due as of March 31, 1982, and for ten percent (10%) attorney’s fees and costs.
Neither Smith nor his wife, both of whom had signed the partnership notes, were named as defendants in the action by Smith & Hitt, and recovery was sought only from the remaining three partners and Chrestman, who was an accommodation party.[3] After Smith & Hitt acquired the *899 note of the partnership, certain partnership equipment was sold for $6,500. Of that amount, $4,656.00 was applied toward rent for the studio, leaving a balance of $1,844.00, which the record shows is being held in escrow, although it is not disclosed who has that escrow amount.
At trial it was stipulated that Charlie Fowler had been declared a bankrupt, therefore, the action against him was dismissed.
Appellees contend that the collateral was impaired because, when Smith & Hitt executed its note to the bank, the bank did not assign the deed of trust to Smith & Hitt as security for the partnership note. The bank did not advance any funds when it assigned the partnership note to Smith & Hitt but retained the deed of trust as collateral for the Smith & Hitt note. The only consideration Smith & Hitt received was the partnership note.
The bank is now secured by the assets of Smith & Hitt for payment in addition to the Smith deed of trust. The partnership note is a part of the assets of Smith & Hitt. The collateral, viz, the deed of trust, is still valid and, we think, probably, the terms are sufficiently broad to secure the Smith & Hitt note, which was signed by Smith individually. If Smith & Hitt pays its note to the bank, it would be entitled to an assignment of the deed of trust by the bank. Therefore, in our opinion, the collateral has not been impaired, since the deed of trust is still in full force and effect and may be foreclosed at the proper time. Nevertheless, the trial court decided the case on the narrow issue of impairment of collateral under § 75-3-606.
PART II.
However, the matter does not end there. The partnership, responsible for the indebtedness, which was assigned to Smith & Hitt, was dissolved because of the bankruptcy of the partner, Charlie Fowler.
Mississippi Code Annotated § 79-12-61(5) (Supp.1984) states: “Dissolution is caused: ... (5) By the bankruptcy of any partner or the partnership; .... ”
Mississippi Code Annotated § 79-12-59 (Supp.1984) provides the following: “On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.”
Therefore, even though the partnership is dissolved on account of the bankruptcy of Charlie Fowler, the partnership is not terminated but continues until the partnership affairs have been wound up. This is particularly true because of the outstanding indebtedness of the partnership, which formed the basis of this lawsuit.
Mississippi Code Annotated § 79-12-73 (Supp.1984) states who may wind up the partnership affairs:
Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided, however, that any partner, his legal representative or his assignee, upon cause shown, may obtain winding up by the court.
This case involves more than a simple suit on a partnership note. In order that complete justice may be done between the holder of the note, the partners, and the accommodation parties, the affairs of the partnership must be wound up. Jurisdiction to wind up the partnership business is vested in the Chancery Court of Sunflower County. Miss.Chancery Practice § 24(16). Therefore, this case should be, and it is, remanded to the Chancery Court of Sunflower County in order that such court may wind up the affairs of the partnership here involved.
Within thirty (30) days after the mandate issues from this Court any of the partners shall be permitted to file a petition to wind up the affairs of the partnership in the Chancery Court of Sunflower County. If none of the partners file such a petition within that period of time, then the Chan- *900 eery Court of Sunflower County will proceed to hear the suit of Smith & Hitt against the defendants named in its complaint, and all equities may be adjusted.
If a petition to wind up the affairs of the partnership is filed, the partners and the accommodation parties should be named as parties in the proceedings so that each party may file such pleadings as may be necessary to protect their respective interests. The suit of Smith & Hitt (here) should be consolidated with the petition to wind up the affairs of the partnership in order that Smith & Hitt may protect its interest. Upon such hearing, the liabilities should be adjusted between the partners and the accommodation parties, taking into consideration the payment by Dr. Robert E. Wiggins, Sr., of $5,000 on the partnership debt, any payments which other partners may have made on that debt, and also the liability of the accommodation parties, if any, under Mississippi Code Annotated § 75-3-415 (1972).
REVERSED AND REMANDED TO THE CHANCERY COURT OF SUNFLOWER COUNTY, MISSISSIPPI.
PATTERSON, C.J., WALKER, P.J., HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

. It is significant that Marion T. Smith was to receive 45% of the profits, yet his liability was limited to an equal portion with the other partners.

. On the original note and upon each renewal, credit life insurance on the lives of the partners was issued and paid for out of the proceeds of the loans.

.Mississippi Code Annotated § 75-3-415 (Supp. 1976) states:
(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it;

(5) An accommodation party is not liable to the party accommodated, and if he pays the *899 instrument has a right of recourse on the instrument against such party.